IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 1, 2017

IN RE L.M.H., ET AL.

**Appeal from the Juvenile Court for Knox County**
**No. 139836   Timothy E. Irwin, Judge**

_____

**No. E2017-00604-COA-R3-PT**

_____

In this termination of parental rights case, the Department of Children's Services filed a petition to terminate the parental rights of J.M.F. (father) with respect to L.M.H. and K.K.F. (the children).[1]   DCS alleged the following grounds for termination:   (1) persistence of conditions; and (2) substantial noncompliance with the permanency plan. DCS also sought to terminate father's rights with respect to L.M.H. on the ground of severe child abuse.   The trial court entered an order finding clear and convincing evidence supporting each ground for termination.   By the same quantum of proof, the trial court found that termination of father's rights is in the best interest of the children. Father appeals.   We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Ben H. Houston II, Knoxville, Tennessee, for the appellant, J.M.F.

Herbert H. Slatery III, Attorney General and Reporter, and Jordan K. Crews, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

_____

[1] The children's mother surrendered her parental rights at an earlier time.

OPINION

**I.**

L.M.H. was born in February 2011. On February 12, 2015, K.K.F. tested positive for drugs at birth. On March 20, 2015, DCS filed a petition for a restraining order, asking the court to find the children dependent and neglected. Following a hearing on March 30, 2015, the court found the children to be dependent and neglected due to mother's substance abuse issues. The trial court also found K.K.F. to be the victim of severe child abuse by the mother based on her prenatal drug use. The trial court allowed the children to remain in father's custody and ordered that mother would have no contact with the children.

On May 12, 2015, the guardian ad litem filed an emergency motion to review the children's placement. The GAL alleged that father had no income to support the children because he had lost his job; that he was providing inappropriate care to the children; and that he was not participating in court-ordered services. On June 16, 2015, the court found probable cause that the children were dependent and neglected. The court found that father was not complying with K.K.F.'s need for physical therapy; that he was not cooperating with the GAL; and that he was allowing mother to have contact with the children in violation of the court's order. As a consequence, the court placed the children in the temporary custody of DCS for foster care.

When the children entered foster care, they had considerable problems. K.K.F. suffered from torticollis, a condition affecting her neck and rendering her unable to hold up her head. She was in need of physical therapy to avoid surgery. Also, her head was misshaped, and she had an unhealed sore on her head that left a scar. With respect to L.M.H., the foster mother testified that he "had a lot of trouble attaching to anyone really, he had a lot of anger, he had a lot of behavioral issues." She stated that he "could be extremely violent and destructive" and was behind educationally.

On June 26, 2015, a permanency plan was developed for father. The plan required father to do the following: (1) complete a mental health evaluation and provide accurate and thorough information; (2) cooperate with DCS and all service providers; (3) provide a stable and safe home environment; and (4) maintain a legal source of income sufficient to provide for the family. The court later modified the plan to add two requirements, *i.e.*, that father complete basic parenting classes and complete an alcohol and drug assessment if he fails a drug screen. On September 16, 2015, the court ratified the permanency plan.

The trial court held a permanency hearing and found father to be noncompliant. The court found that father had failed to complete a mental health assessment until September 8, 2015, despite knowing that this had been a requirement since June 2015. Additionally, the court found that father was not providing an appropriate home for the

children because he was living with mother who suffered from substance abuse issues. The court ordered that the children would remain in the temporary custody of DCS.

L.M.H. and his half-brother[2] disclosed to the foster parents that father had been abusive. L.M.H. reported that father hit him with a hanger and threw him off a bunk bed. On October 8, 2015, L.M.H. began treatment with a therapist. L.M.H. reported to the therapist that father was verbally and physically aggressive with him. L.M.H. and his half-brother both reported to the therapist that L.M.H. was hit with a belt, hit in the genitals, kicked, thrown to the floor, and thrown up against a wall. Early in therapy, the therapist diagnosed L.M.H. with post-traumatic stress disorder (PTSD). The therapist testified that "when they came for therapy, their behavior was very poor, and that's typically a true reflection of kids who have experienced trauma." She reported that L.M.H. "will need therapy for a very long time to address the significant trauma symptoms he has exhibited." Based on her treatment of L.M.H., she could not recommend that L.M.H. be returned to father's home. She found that it "would be psychologically damaging to remove [L.M.H.] from the current foster home . . . and would disrupt the progress he is making and return him to a state of fear and anxiety."

On November 4, 2015, DCS filed a motion to suspend father's visitation with the children based upon the recommendation of the therapist. DCS asserted that "it appears that the children have significantly worse behavior after visits with their parents and this behavior can last for several days after visits." DCS asked the court to suspend visitation until the therapist "is of the opinion that the children can initiate supervised contact with their parents without the likely danger of psychological harm which will also necessitate progress for the parents on their issues as well." The court entered an order suspending visitation.

After father's visitation with the children was suspended, he failed to maintain contact with DCS. On July 6, 2016, DCS filed a petition to terminate father's parental rights to the children. DCS alleged the following grounds to terminate father's rights: (1) persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3); and (2) substantial noncompliance with the permanency plan pursuant to Tenn. Code Ann. § 36-1-112(g)(2). DCS also alleged that L.M.H. is the victim of severe child abuse pursuant to Tenn. Code Ann. §§ 36-1-113(g)(4) and 37-1-102(b)(22). The trial court found clear and convincing evidence supporting each ground for termination. The court also found that termination of father's rights is in the best interest of the children. He appeals.

## II.

Father raises the following issues on appeal as taken verbatim from his brief:

---

[2]     L.M.H.'s half-brother is not subject to this termination proceeding.

- 3 -

Did the trial [c]ourt err by allowing hearsay statements made by the children into evidence under circumstances that did not indicate trustworthiness?

Was [DCS] barred by the doctrine of *res judicata* as well as by the plain language of Tenn. Code Ann. § 37-1-129(b)(2) from pursuing a case of severe abuse against [f]ather?

Did the trial [c]ourt err by terminating the parental rights of [f]ather for severe abuse pursuant to Tenn. Code Ann. §§ 36-1-113(g)(4); 37-1-102(b)(22)(B); and 37-1-102(b)(22)(C)?

Did the trial [c]ourt err by terminating the parental rights of [f]ather for substantial noncompliance with the permanency plan pursuant to Tenn. Code Ann. § 36-1-113(g)(2)?

Did the trial [c]ourt err by terminating the parental rights of [f]ather for persisten[ce of] conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3)?

Did the trial [c]ourt err by finding that . . . termination of [f]ather's parental rights was in the best interest[] of his children . . . ?

(Italics in original; paragraph numbering in original omitted.)

### III.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re*

*Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." **In re Bernard T.**, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." **In re Audrey S.**, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. **In re Angela E.**, 303 S.W.3d at 251 (citing **In re Marr**, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." **Id.** at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." **In re C.B.W.**, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. **In re Carrington**, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.")

The Supreme Court has stated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of

correctness.

*Id.* at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

## IV.

### A.

In his brief, father asserts that the trial court erred in allowing the foster mother to testify about statements that L.M.H. made to her regarding father's abuse. Father objected to the testimony on the basis of hearsay, but the court overruled the objection. The court found that the statements were a "child's unsolicited statement regarding abuse." Under Tenn. R. Evid. 803(25), the following statements are not excluded by the hearsay rule:

> Provided that the circumstances indicate trustworthiness, statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse or neglect, offered in a civil action concerning . . . issues concerning severe child abuse pursuant to Tenn. Code Ann. § 37-1-102(b)(21), or issues concerning termination of parental rights pursuant to Tenn. Code Ann. § 37-1-147 and Tenn. Code Ann. § 36-1-113 . . . .

Father claims that L.M.H.'s statements to the foster mother should not have been admitted because they "were not made under circumstances that indicate trustworthiness." He bases this argument on the therapist's acknowledgement that L.M.H. has a problem with lying and the fact that the statements were not made in a forensic interview or other neutral setting to a third party with no interest in the case.

This Court has stated that "the determination of trustworthiness is a matter for the trial court to decide and [that] decision will not be disturbed on appeal unless there is a showing of abuse of discretion." *State Dept. of Human Servs. v. Purcell*, 955 S.W.2d 607, 609 (Tenn. Ct. App. 1997). Furthermore, "[w]here the trial judge has seen and heard the witnesses, especially if issues of credibility and weight to be given oral testimony are involved, considerable deference must be accorded those circumstances on review." *Id.* We will find an abuse of discretion "only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its

decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." ***Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.***, 249 S.W.3d 346, 358 (Tenn. 2008).

L.M.H. made the statements at issue to the foster mother who testified regarding them. He made the *same* statements to the therapist. Additionally, L.M.H.'s half-brother made statements to the foster mother and to the therapist about the same instances of abuse of L.M.H., as reported by him.

In summary, the evidence demonstrates that L.M.H. made unsolicited statements to the foster mother and made the same statements to the therapist. His half-brother corroborated these statements by reporting the same abuse of L.M.H. to the foster mother and the therapist. The trial court, who observed the "reporting" witnesses, held that "the circumstances [of the statements] indicate trustworthiness." The evidence does not preponderate against the trial court's credibility determinations. The court did not abuse its discretion in admitting L.M.H.'s statements under the authority of the exception to the hearsay rule provided in Tenn. R. Evid. 803(25).

**B.**

Father asserts that DCS is barred from pursuing a claim of severe child abuse against him on the basis of res judicata. He claims that res judicata applies because DCS had the opportunity to address the issue of severe child abuse during the dependency and neglect hearing on September 16, 2015 but failed to do so. "The doctrine of res judicata . . . bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." ***Jackson v. Smith***, 387 S.W.3d 486, 491 (Tenn. 2012).

The Supreme Court has stated the following with regard to raising the defense of res judicata:

> Res judicata is one of the affirmative defenses that must be included in the defendant's answer. However, in appropriate circumstances, it may be raised in a Tenn. R. Civ. P. 12.02(6) motion.

***Id.*** (internal citation omitted). "In order to succeed on a plea of res judicata, . . . the party raising the defense must plead it, and must carry the burden of proving it." ***Gregory v. Gregory***, 803 S.W.2d 242, 244-45 (Tenn. Ct. App. 1990).

This Court has stated that under Tenn. R. Civ. P. 8.03, " 'any . . . matter constituting an affirmative defense' must be set forth in a pleading prior to trial. Failure to [plead] an affirmative defense generally results in a waiver of the defense." ***ADT Sec.***

***Servs., Inc. v. Johnson***, 329 S.W.3d 769, 778 (Tenn. Ct. App. 2009). Tenn. R. Civ. P. 8.03 provides that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . . res judicata . . . and any other matter constituting an affirmative defense."

After reviewing the trial transcripts, as well as the pleadings and exhibits in the record before us, we have found no indication that father raised the defense of res judicata in any pleading filed in the trial court. In fact, the only time that father asserted the issue of res judicata was during closing arguments before the trial court, and the trial court did not address the defense in its ruling. Because father failed to plead the defense of res judicata before the trial, father has waived that defense.

## C.

Father also claims that DCS is barred from alleging severe child abuse as grounds for termination under the language of Tenn. Code Ann. § 37-1-129(b)(2). In his brief, father argues that that statute "appears to prohibit DCS and other parties from having a second bite at the apple . . . since it mandates trial [c]ourts to determine whether or not severe abuse occurred at the time of the dependency and neglect adjudication." He claims that Tenn. Code Ann. § 37-1-129(b)(2) required the trial court to make a finding regarding severe child abuse during the September 16, 2015 hearing. We disagree.

Tenn. Code Ann. § 37-1-129(b)(2) provides the following:

> If the petition alleged the child was dependent and neglected as defined in § 37-1-102(b)(13)(G), or if the court so finds regardless of the grounds alleged in the petition, the court shall determine whether the parents or either of them or another person who had custody of the child committed severe child abuse.

Tenn. Code Ann. § 37-1-102(b)(13)(G) defines a "dependent and neglected child" as one "[w]ho is suffering abuse or neglect." In this case, there was not a petition to declare the children dependent and neglected under this definition. Furthermore, the hearing on September 16, 2015 was upon a motion by the GAL alleging that father was in violation of the court order prohibiting father from allowing the mother to have contact with the children; the bench order placing the children in DCS custody; and for judicial review of the progress with the permanency plan. Accordingly, no finding regarding severe child abuse was required under the statute because DCS was alleging dependency and neglect as defined in Tenn. Code Ann. § 37-1-102(b)(13)(G). Because Tenn. Code Ann. § 37-1-129(b)(2) does not apply to this case, nothing in that statute prohibits DCS from pursing a finding of severe child abuse.

## V.

### A.

As previously noted, DCS sought to terminate father's parental rights on the basis of persistence of conditions. Tenn. Code Ann. § 36-1-113(g)(3) allows a court to terminate parental rights upon clear and convincing evidence of the following:

> The child has been removed from the home of the parent . . . by order of a court for a period of six (6) months and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent . . . still persist;
>
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future; and
>
> (C) The continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

With respect to persistence of conditions, the trial court found the following:

> [Father] has never taken any responsibility for the damage caused to his children. Despite multiple intervention services, he has apparently failed to learn anything about appropriate discipline or the impact of neglect and physical violence on children. He inflicted such harm on [L.M.H.] and failed to protect [him] from his wife's substance abuse and from her neglect and inappropriate discipline; he minimized his wife's substance abuse and failed to protect [L.M.H.] and [K.K.F.] from resulting neonatal abstinence syndrome.
>
> This Court agrees that [father's] employment is a very positive thing. He works, he works hard, but that's all he does. He continues to live at Hamilton Inn. This Court could not in good conscience place children there. He has done nothing to demonstrate to this Court that he could provide proper care for these children and keep them safe.

- 9 -

(Paragraph numbering in original omitted.)  Based upon these findings, the trial court found clear and convincing evidence supporting the ground of persistence of conditions.

**B.**

The evidence does not preponderate against the trial court's findings on this ground.  Father asserts that "the sole reason cited for a finding of dependence and neglect in the [trial court's] adjudicatory order . . . was the 'inability of the father . . . to provide an appropriate home due to the mother currently residing in his home. ' "  He argues that mother is no longer a part of his life.

Father's failure to provide an appropriate home for the children led to their removal.  He has subsequently failed to secure housing that would be safe and appropriate for the children.  The trial court found that the physical environment at Hamilton Inn where father resides is not safe or healthy place for the children.  Father argues that, if the children were returned to him, he could possibly obtain a voucher so that he could find appropriate housing.  Obtaining this voucher, however, is speculative and does not demonstrate that father has secured appropriate housing for the children.

There are other issues with respect to the placement of the children with father.  Father has failed to maintain contact with DCS and has been uncooperative with DCS throughout this case.  He has failed to take responsibility for his actions leading to the removal of the children and refuses to acknowledge the harm that he has caused the children. Conditions persist that would subject the children to further neglect or abuse in the custody of father.  We hold, as a matter of law, that the evidence does not preponderate against the trial court's finding of clear and convincing evidence supporting termination of father's parental rights on the ground of persistence of conditions.

**C.**

A court may terminate a parent's rights when "[t]here has been substantial noncompliance by the parent . . . with the statement of responsibilities in a permanency plan . . . [.]"  Tenn. Code Ann. § 36-1-113(g)(2).  The trial court found clear and convincing evidence that father failed to substantially comply with the permanency plan. The court made the following findings supporting termination of father's parental rights on that ground:

> The first thing on any permanency plan is to stay in touch with [DCS], to let them know your whereabouts.  There was a whole litany of contacts since September 2016, more than I've ever heard in a case.  Not one face-to-face meeting outside of court since September.  That doesn't signal to me

that this man wants his children back. He claims he's been picked on by the [GAL], mistreated by [DCS]. This court does not find his testimony to be credible. He just chose not to participate. He did not show up for Child and Family Team Meetings. He did not demonstrate any interest in how his children were doing. He was not truthful during his mental health assessment and he did not follow through with even the minimal resulting recommendations. He did not make any progress in locating appropriate housing and did not take advantage of the assistance available from [DCS]; he just came in saying he doesn't have housing because they took his kids. He never attempted an alcohol or drug assessment and he did not appear for any of the requested drug tests, including the hair follicle test agreed upon three months ago.

The trial court also found that DCS had "made extraordinary efforts in this case." Based upon these findings, the trial court found clear and convincing evidence that father failed to substantially comply with the permanency plan.

### D.

Father acknowledges that the permanency plan required him to obtain safe and stable housing, but claims that he had appropriate housing at the time that the children were removed. This is not correct. When the children were removed, father had inappropriate housing because he allowed the mother who suffered from substance abuse issues to be in the home with the children. At trial, father had inappropriate housing because he lived in a hotel that the trial court deemed unsafe and inappropriate for the children. The fact that father's housing is inappropriate for a different reason than it was at the time the children were removed is not the issue. The permanency plan required father to obtain stable and safe housing for the children, and he has failed to do so.

The permanency plan required father to complete a mental health assessment and participate in all recommended services. Father completed a mental health assessment, and the evaluator recommended individual therapy and case management. Despite the plan being ratified in September 2015, father did not complete a parenting course or therapy until December 2015. Furthermore, father refused case management when the evaluator suggested it to him. It is clear that father did not take the recommendations from the mental health assessment seriously.

Father has refused to stay in contact with DCS, and consequently, DCS has not been able to help father complete the requirements of the permanency plan. The Supreme Court has stated that "[i]n the context of the requirements of a permanency plan,

the real worth and importance of noncompliance should be measured by both the degree of noncompliance and the weight assigned to that requirement." ***In re Valentine,*** 79 S.W.3d at 548. While father completed a mental health assessment, a parenting class, and some therapy, he has done little else. Father has failed to comply with the requirements that would enable the children to be returned to him. We hold, as a matter of law, that the evidence does not preponderate against the trial court's finding of clear and convincing evidence that father failed to substantially comply with the permanency plan.

## E.

The trial court held that L.M.H. was the victim of severe child abuse by father. The court found clear and convincing evidence of severe child abuse based upon the following:

> One side says [abuse] happened; the other side says it did not. These children have independently and at different times described the same events to their therapist and, on occasion, spontaneously to their foster mother. They demonstrate symptoms of [PTSD]. Those symptoms improved when they stopped having contact with [father]. Their behavior improved . . . —that means something. [Father] completely denied any physical abuse ever to any of his children. [DCS] and this Court have documented [father's] history of inappropriate physical discipline to his older children, his admission of physical and emotional abuse to those children, and his statement that he would kill himself if he had to continue caring for them. The Court believes the statements of the children and finds that [father's] testimony was not credible. [Father] hurt these children; he is a severe abuser.

The court concluded that father committed severe child abuse against L.M.H. as defined in Tenn. Code Ann. §§ 37-1-102(b)(22)(B) and 37-1-102(b)(22)(C).

## F.

When a parent has committed severe child abuse as defined by Tenn. Code Ann. § 37-1-102, the court may terminate the parent's rights. Tenn. Code Ann. § 36-1-113(g)(4). Severe child abuse is defined, in pertinent part, as follows:

> (B) Specific brutality, abuse or neglect towards a child that in
> the opinion of qualified experts has caused or will reasonably

- 12 -

be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delays or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;

(C) The commission of any act towards the child prohibited by § 39-13-309, §§ 39-13-502 -- 39-13-504, § 39-13-515, § 39-13-522, § 39-13-302, § 39-15-402, or § 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child[.]

Tenn. Code Ann. § 37-1-102(b)(22). The trial court found severe child abuse under both of these definitions.

## G.

On appeal, DCS concedes that the trial court did not make specific findings with respect to its finding of severe child abuse as defined in Tenn. Code Ann. § 37-1-102(b)(22)(C). DCS acknowledges that "the trial court's termination order does not reference the specific criminal statute [f]ather violated [and] will not defend this particular finding of severe abuse on appeal."

As noted by DCS, the trial court's order fails to specify the facts supporting a finding of severe child abuse under that definition as required by Tenn. Code Ann. § 36-1-113(k). We modify the trial court's order to delete termination of father's rights based upon severe child abuse as defined by Tenn. Code Ann. § 37-1-102(b)(22)(C).

## H.

With respect to severe abuse as defined in Tenn. Code Ann. § 37-1-102(b)(22)(B), father argues that there is insufficient evidence to support a finding that he committed acts of brutality, abuse, or neglect or failed to protect the children. He claims that the therapist "can't say exactly when the children began experiencing trauma . . . ." Father's argument is unpersuasive. The fact that the therapist cannot pinpoint the exact time when L.M.H. started to experience trauma is not dispositive. It is not necessary to say exactly when the trauma started. The fact is that L.M.H. suffered trauma caused by father, requiring him to undergo therapy.

Father also claims that L.M.H. has a problem with lying. While the therapist acknowledged that L.M.H. engaged in conduct problems including lying, she indicated that the lies typically involved lying about stealing things. There was no concern by the therapist that L.M.H. lied about the trauma and abuse that he suffered. With respect to

the trauma that L.M.H. suffered, she noted that L.M.H. and his half-brother both reported the same instances of abuse. There is no evidence to indicate that L.M.H. was untruthful about father's treatment of him.

Father argues that L.M.H.'s statements about abuse are suspect because they were made to the foster mother first. He claims that "there are serious and substantial doubts about whether the statements made by [L.M.H.] were unduly influenced by the [f]oster [m]other, who had a clear bias against reunification with the [f]ather." Father provides no evidence to support this claim. There is no evidence that the foster mother influenced L.M.H. to fabricate statements about the abuse he suffered at the hands of father. Furthermore, the trial court believed the statements of L.M.H. and found father's testimony to be not credible. Father's arguments with respect to his challenge to the veracity of the children's testimony do not overcome the clear and convincing evidence that L.M.H. suffered severe abuse at the hands of father.

At trial, the parties stipulated that L.M.H.'s therapist is an expert in psychotherapy. Based on therapy of L.M.H., she diagnosed him with PTSD. She testified that she could point to specific acts by the father that caused the PTSD, including physical abuse at the hands of father and witnessing sexual activity between the father and mother. The therapist also asserted that studies show that children who suffer trauma have potential long-term consequences, including "significant impairments in their ability to hold down jobs, to maintain stable relationships." The psychotherapy treatment summary for L.M.H. provides the following prognosis:

> It is likely that [L.M.H.] will need therapy for a very long time to address the significant trauma symptoms he has exhibited. Although he is doing much better, he is still prone to regress when triggered by memories of past trauma. . . . Prognosis could be affected by the stability of his home environment and adoption issues. It is of the utmost importance for him to have consistency and structure in order to continue attaching and to build trusting relationships.

This Court has made a finding of severe child abuse in cases where the victim has suffered abuse similar to that in this case. In *In re Devonta L.C.*, this Court reversed the trial court's dismissal of the severe abuse allegation when the trial court found that "the only specific act of abuse that was proven was the 'improper whipping' by Mother, and that this was not sufficient to rise to the level of severe child abuse." No. E2012-00678-COA-R3-PT, 2013 WL 395977, at *4 (Tenn. Ct. App., filed January 31, 2013). This Court found that severe child abuse may be found "based not on specific, proven acts of abuse, but rather on the 'combined weight of the facts.' " *Id.* In that case, the child was diagnosed with PTSD, and the court held that, even though the only specific act proven was that mother whipped the child with a belt, the evidence showed that the child suffers

- 14 -

from "severe disorders, depression, developmental delay/intellectual disability, and impairment of the . . . ability to function in their environment." *Id.* at \*11. In *In re Caleb F.N.P.*, the court found sufficient evidence of severe child abuse based on the therapist's diagnosis of an adjustment disorder, mixed with anxiety and depression, and PTSD caused by neglect and abuse. No. M2013-00209-COA-R3-PT, 2013 WL 5783141, at \*14 (Tenn. Ct. App., filed October 25, 2013).

In this case, L.M.H. has been diagnosed with PTSD. He will need extended therapy to address his trauma symptoms. His exposure to trauma has potential long term consequences. Early in therapy, L.M.H. also scored abnormal "in all of the categories including emotional symptoms, conduct problems, hyperactivity, peer problems, and prosocial behavior." It is clear that the abuse that L.M.H. suffered has had a significant effect on him. This is sufficient evidence to establish that L.M.H. has been severely abused by father as defined in Tenn. Code Ann. § 37-1-102(b)(22)(B). We hold, as a matter of law, that the evidence does not preponderate against the trial court's finding of clear and convincing evidence supporting the allegation that L.M.H. is the victim of severe child abuse by father as defined in Tenn. Code Ann. § 37-1-102(b)(22)(B).

## VI.

### A.

Since we have found statutory grounds warranting the termination of father's parental rights, we now focus on whether termination is in the best interest of the children. When considering the issue of "best interest," we are guided by the following statutory factors as set forth in Tenn. Code Ann. § 36-1-113(i), which provides:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interests to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular

- 15 -

visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

"The above list is not exhaustive[,] and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)). In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

**B.**

The trial court held that termination of father's parental rights is in the best interest of the children based upon the following:

[Father] has not made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the children's best interest to be in his home despite extraordinary efforts by available social services agencies for such duration of time that lasting adjustment does not reasonable appear possible. [Father] has not been allowed to maintain regular visitation or other contact with the children. The nature of the relationship established between [father] and the children may be assessed by the impact of his absence. The children haven't seen him in a long time. . . . A change of caretakers and physical environment is likely to have a devastating effect on the children's emotional, psychological and medical condition. [Father] has shown brutality, physical, emotional or psychological abuse toward [L.M.H.] and his half-brother in the way he whipped the children, hit them in the genial area, hit them with fly swatters and hangers, exposed them to sexual conduct and drug abuse. He has shown neglect toward [L.M.H. and K.K.F]. When [she] entered foster care[, K.K.F.'s] neck was twisted and her head misshapen because her therapy had not been done. The physical environment of [father's] home, at the Hamilton Inn, is certainly not healthy or safe for any child. . . . [Father] failed to complete any alcohol and drug assessment and . . . failed to comply with drug screens. [Father's] mental and/or emotional status would be detrimental to the children or prevent [him] from effectively providing safe and stable care and supervision for the children. When he completed his mental health assessment, the clinician found him to be delusional. . . . His failure to acknowledge his lengthy history of physical abuse to children, his failure to take responsibility for the removal of these children, and his belief that the only thing preventing their return is his lack of housing all point to [father's] unwillingness or inability to focus on his own conduct.

The court concluded that the children are entitled to a safe, secure, and loving home and that termination of father's parental rights is in the best interest of the children.

## C.

The evidence does not preponderate against the trial court's finding that termination of father's parental rights is in the best interest of the children. Father has not made changes to his circumstances that would make it safe and in the best interest of the

children to be in his home.  He has done very minimal work in addressing the concerns of the therapist and the concerns addressed in the permanency plan.  DCS has made extensive efforts to help father make lasting adjustments so that the children could return to his home, but father has failed to take advantage of these resources.  He has refused to stay in contact with DCS, creating a barrier to their efforts to help him.  Father has not had regular visitation or contact with the children.  While Father's visitation has been suspended, that is because of his own failure to address his issues and his treatment of the children.  Because father has not been able to regularly visit the children, he has failed to establish a meaningful relationship with them.  Changing the children's caretaker would likely have a negative emotional and psychological effect on the children.  The children have thrived in their current foster home.  When father did have visitation with the children, their behavior, especially L.M.H.'s, regressed after visitation with father.  Father has shown brutality toward the children.  There is evidence that the children were abused by father.  This abuse and father's treatment of the children has also caused emotional and psychological issues with the children, including L.M.H.'s diagnosis of PTSD.  Father's mental health assessment indicated that he is delusional.  Thus, his mental status could be detrimental to the children.  We hold, as a matter of law, that termination of father's parental rights is in the best interest of the children.

## VII.

The judgment of the trial court is modified to vacate the trial court's holding that father committed severe child abuse as defined by Tenn. Code Ann. § 37-1-102(b)(22)(C).  As modified, the trial court's judgment is affirmed.  The costs on appeal are assessed to the appellant, J.M.F.  This case is remanded for enforcement of the trial court's judgment, as modified, and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE